557 F.2d 596
 Wilbur McDONALD, Plaintiff-Appellant,
v.
STATE OF ILLINOIS, City of Chicago, County of Cook, Edward
v. Hanrahan, Bernard M. Carey, Joseph Woods, Richard Elrod,
Department of Corrections of Cook County, Daniel Weil, James
Rochford, James Conlisk, and William Arnos and Gerald
Saternos, Defendants-Appellees.
 No. 76-1265.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 22, 1976.
 Decided June 15, 1977.
 
 Frederick F. Cohn, Chicago, Ill., John A. Dienner, III, Asst. State's Atty., Chicago, Ill, for plaintiff-appellant.
 William R. Quinlan, Corp. Counsel, Edmund Hatfield, Asst. Corp. Counsel, Chicago, Ill, William J. Scott, Atty. Gen., Raymond J. McKoski, Asst. Atty. Gen., Chicago, Ill, for defendants-appellees.
 Before CLARK, Associate Justice (Retired),* FAIRCHILD, Chief Judge, and HASTINGS, Senior Circuit Judge.**
 FAIRCHILD, Chief Judge.
 
 
 1
 Plaintiff, Wilbur McDonald, brought this civil rights action pursuant to 42 U.S.C. Sec. 1983 and the Fourteenth Amendment against the State of Illinois, Cook County, the City of Chicago, the Cook County Department of Corrections and various county and city officials. JUrisdiction was claimed under 28 U.S.C. Sec. 1331 as well as Sec. 1343. Plaintiff claims that defendants arrested, convicted and sentenced him for a crime he did not commit, and, therefore, deprived him of his right to liberty, as well as other constitutional rights. He seeks money damages. The district court granted summary judgment as to certain defendants, and as to those remaining, dismissed the complaint for failure to state a claim upon which relief could be granted. We reverse the dismissal of the case against defendant Daniel Weil. We affirm all other dismissals and the grants of summary judgment.
 
 
 2
 1. The Facts Leading to Plaintiff's Conviction for Murder and His Subsequent Parton
 
 
 3
 On July 11, 1970, Chicago police officers arrested Wilbur McDonald and charged him with the murder of Agnes Lehmann. Mrs. Lehmann's body had been found in a wooded area of Grant Park in downtown Chicago. Earlier, plaintiff had been found, semi-conscious, on railroad tracks near Grant Park. Police had taken him to a hospital where the arrest was subsequently made.
 
 
 4
 Plaintiff states that he happened to be in Grant Park on the day of Mrs. Lehmann's murder because he was seeking a cool refuge from July heat. Originally, he planned to go to the beach, but claims he was robbed on the way, a matter he reported to defendants William Arnos and Gerald Salternos, both Chicago police officers. Instead, then, he entered Grant Park where he claim to have been beaten by several men and again robbed. During his escape, which apparently took him near or through the wooded area where Mrs. Lehmann's body lay, plaintiff lost a shoe and his clothes somehow came in contact with the victim's blood. He collapsed at railroad tracks near the park.
 
 
 5
 On August 17, 1971, plaintiff was tried and convicted of the murder of Agnes Lehmann in the Circuit Court of Cook County. He was sentenced to 100-150 years imprisonment.
 
 
 6
 Close to two years later, in August, 1979, Lester Harrison, who was arrested by police in connection with a murder in Grant Park, confessed to the 1970 murder of Agnes Lehmann. When the State's Attorney for Cook County learned of Harrison's confession, he agreed to McDonald's release from custody. McDonald was thus freed on August 15, 1973. He was granted a new trial in which the state moved to nole prosse. One year later, on August 19, 1974, the Governor of Illinois granted McDonald a full pardon "based on innocence."
 
 II. The Nature of Plaintiff's Claim
 
 7
 Plaintiff filed this suit on August 15, 1975. Simultaneously pending was his action for damages against the State of Illinois in the Illinois Court of Claims. The thrust of plaintiff's complaint in both suits is that the imprisonment of an innocent man for a crime which he did not commit is a violation of due process which must be compensated for by the state which is responsible for the incarceration.
 
 
 8
 Also alleged in the federal complaint is wrongdoing on the part of the various city and county officials named as defendants. Plaintiff claims that since this wrongdoing occurred while defendants were acting under color of state law, and since the result of the wrongdoing was the conviction and imprisonment of plaintiff for a crime which he did not commit is a violation of due process which must be compensated for by the state which is responsible for the incarceration.
 
 
 9
 Also alleged in the federal complaint is wrongdoing on the part of the various city and county officials named as defendants. Plaintiff claims that since this wrongdoing occurred while defendants were acting under color of state law, and since the result of the wrongdoing was the conviction and imprisonment of plaintiff for a crime he did not commit, the officials are liable to compensate plaintiff. Specifically, plaintiff alleges (1) that he was arrested and a blood sample taken without probable cause; (2) that his clothes were seized and fingernail scrapings taken without a warrant; (3) that he was denied adequate legal representation, in that defendant Daniel Weil, then Superintendent of the Cook County Department of Corrections, prevented his counsel from taking photographs of plaintiff shortly after his arrest, which photographs would have tended to corroborate plaintiff's testimony that he was beaten near the scene of the murder; (4) that he was deprived of his due process right to access to exculpatory evidence by the refusal of defendant police officers William Arnos and Gerald Saternos to discuss facts they knew prior to their testimony; and by their failure properly to report their initial encounter with plaintiff; and (5) that members of the Chicago Police Department and the State's Attorney's Office of Cook County failed fully to investigate plaintiff's version of what had occurred.
 
 
 10
 III. The Adequacy of Plaintiff's Claim Against the State of Illinois
 
 
 11
 The district court dismissed the case against the State of Illinois on the ground that plaintiff had failed to state a claim for which relief could be granted. Plaintiff's complaint alleges that by virtue of his imprisonment for a crime he did not commit, the State of Illinois deprived him of liberty in violation of the Fourteenth Amendment. Plaintiff apparently now concedes that no procedural flaws existed in his apprehension or conviction. But he argues that even absent such flaws, when the system results in the imprisonment of an innocent man, due process has been denied.[1] Accordingly, he seeks damages.
 
 
 12
 We must first consider certain procedural obstacles to any private claim brought against this particular defendant. Private actions for damages against the states have traditionally been barred from the federal courts by the doctrine of sovereign immunity as inferred from the Eleventh Amendment:
 
 
 13
 The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 14
 While the Amendment by its terms does not bar suits against a state by its own citizens, the Supreme Court has consistently extended the concept of sovereign immunity to such suits. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (and cases cited therein).
 
 
 15
 The federal courts can exercise jurisdiction, however, in cases where the state waives its immunity. Cf. Edelman v. Jordan, supra, at 663, 94 S.Ct. 1347 (1974). Plaintiff cites us to Article 13, Section 4 of the Illinois Constitution of 1970 as evidence of that state's waiver of sovereign immunity. We have considered the section and find that while it does waive sovereign immunity, the waiver is made subject to such limitations as the state legislature may impose. Section 4 provides:
 
 
 16
 Except as the General Assembly may provide by law, sovereign immunity in this State is abolished.
 
 
 17
 [Emphasis added.]
 
 
 18
 And indeed, the General Assembly of Illinois has provided that in cases such as this, where damages are sought for wrongful imprisonment, sovereign immunity is waived only as to suits brought in the Illinois Court of Claims:
 
 
 19
 The court [of claims] shall have exclusive jurisdiction to hear and determine the following matters:
 
 
 20
 ******
 
 
 21
 (c) All claims against the State for time unjustly served in prisons of this State where the persons imprisoned shall receive a pardon from the governor stating that such pardon is issued on the ground of innocence of the crime for which they were imprisoned.
 
 
 22
 ******
 
 
 23
 Ill.Rev.Stat., Ch. 37, Sec. 439.8. Moreover, the Assembly has limited the amount of damages which can be awarded in cases of wrongful imprisonment to $15,000 for wrongful imprisonment of five years or less, to $30,000 for five to fourteen years, and to $35,000 for more than fourteen years. Ill.Rev.Stat., Ch. 37, Sec. 439.8.
 
 
 24
 Plaintiff nevertheless contends that sovereign immunity does not bar him from pursuing this federal suit because he claims that the monetary limitations on recovery imposed by section 439.8 are unconstitutional, (1) because Art. 13, Sec. 4 of the Illinois Constitution was not intended to allow the legislature to limit the amount of potential state liability, and (2) because the Equal Protection Clause of the Fourteenth Amendment prohibits the states from drawing irrational distinctions in the treatment of citizens. In the latter respect, plaintiff argues that it is irrational for the State of Illinois to single out the tort of wrongful imprisonment and tell citizens who suffer such harm that their recovery against the state is limited, while citizens who suffer other forms of tortious injury at the hands of the state are not subject to the same limitations.
 
 
 25
 In considering whether or not plaintiff's suit against the State of Illinois is barred by sovereign immunity, we begin our analysis by noting that plaintiff does not challenge the decision of the General Assembly of Illinois to limit the forum in which the state can be sued. Indeed, we do not think plaintiff could successfully challenge this limitation. It has long been recognized that states can limit their waiver of sovereign immunity to actions brought in their own courts and, indeed, even as to particular state courts. See, e.g., Petty v. Tennessee Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). Thus, we must conclude that even if we were somehow empowered to render a decision on the constitutionality of the Illinois law limiting the amount of recovery in cases of wrongful imprisonment brought against the state, we would still have no power to consider the merits of plaintiff's substantive case or to award damages because the State of Illinois has in no way conceded to us the power so to act. Section 439.8 is quite specific in limiting jurisdiction in cases such as this to the Illinois Court of Claims. It is the Illinois Court of Claims alone then that can consider the merits of plaintiff's case. And so, we believe it must be the Court of Claims that considers the constitutionality of any attempt by the state legislature to limit the amounts it can award in damages.
 
 
 26
 Plaintiff further argues that defendant's counsel's failure to raise sovereign immunity in the district court bars its invocation at the present stage of the proceeding. We do not agree. In Ford Motor Co. v. Dept. of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), sovereign immunity was not argued by the State of Indiana until the suit was before the Supreme Court. Nevertheless, the Court found:
 
 
 27
 This was in time.... The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court.
 
 
 28
 Id. at 467, 65 S.Ct. at 352. The failure of state's counsel to raise a sovereign immunity defense at the trial stage would be significant only if the state had empowered counsel to waive its immunity. Cf. Ford Motor Co. v. Dept. of Treasury of Indiana, supa, at 466-69, 65 S.Ct. 347. Plaintiff has not cited any state law vesting in the Attorney General of Illinois the power to waive that state's sovereign immunity, nor have we found any such law.
 
 
 29
 Accordingly, without expressing any view as to the merits of plaintiff's claim, we affirm the dismissal of the district court as to the State of Illinois because we conclude that exercise of federal jurisdiction is barred by the Eleventh Amendment.
 
 
 30
 IV. The Adequacy of Plaintiff's Claim Against Individual Defendants
 
 
 31
 Pursuant to 42 U.S.C. Sec. 1983, plaintiff seeks damages against a number of city and county officials for alleged deprivation of constitutional rights while acting under color of state law. We find the law to be clear that for plaintiff to state a cognizable claim, he must allege more than mere negligence on the part of these defendants. See Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); Bonner v. Coughlin, 545 F.2d 565 (7th Cir.1976); Thomas v. Pate, 516 F.2d 889, 891 n. 2 (7th Cir.1975), cert. denied, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). Indeed, in the case of supervisory officials, he must allege some personal involvement in the deprivation. See Adams v. Pate, 445 F.2d 105 (7th Cir.1971).
 
 A. Defendants Hanrahan and Carey
 
 32
 We have considered plaintiff's complaint and do not find it adequate to state a claim with respect to defendants Edward Hanrahan and Bernard Carey, past and present State's Attorney for Cook County. At most, plaintiff alleges that the State's Attorney's office failed adequately to investigate plaintiff's version of what transpired on July 11, 1970. He does not allege that this was intentional or reckless on defendant's part. Moreover, as defendant's note, even if every part of plaintiff's story of having been the victim of multiple thefts had been checked out and found true, it was not inconceivable that he could still have been involved in the murder of Mrs. Lehmann. He was found near the crime, certain personal effects, notably his shoe, were found near the victim's body, and the victim's blood was found on his clothing. In this light, there is no reason to read an implied charge of recklessness into plaintiff's complaint.
 
 
 33
 The duty of the prosecutor is to bring to trial those individuals whom he reasonably believes are guilty of the crime with which they are charged. So long as he acts within the scope of this duty, he is immune from civil liability. See Cawley v. Warren, 216 F.2d 74 (7th Cir.1954). Nothing in plaintiff's complaint suggests that defendants Hanrahan or Carey abused their offices or departed from this duty with respect to plaintiff, and therefore, we conclude they are immune from liability and we affirm the district court's dismissal of the complaint against them.
 
 B. Defendants Arnos and Saternos
 
 34
 Similarly, we find the complaint inadequate to state a claim as against defendants William Arnos and Gerald Saternos, members of the Chicago police force. Plaintiff alleges that Arnos and Saternos were remiss in failing to file a report about the robbery of which plaintiff informed them. Moreover, plaintiff complains that the two policemen's refusal to talk with plaintiff prior to trial, when they were the only witnesses who could corroborate his story about being robbed, was to deny him exculpatory evidence.
 
 
 35
 As to the first allegation, without expressing any view as to whether a police officer's intentional and invidious failure to file a robbery report could state a constitutional claim, we must find the complaint deficient as alleging no more than possible negligence on the part of the named defendants. Plaintiff never suggests that the police officers intentionally failed to file a report or were reckless in not so doing.
 
 
 36
 As to the second allegation, we find that no damage had been alleged. Plaintiff may not have spoken with defendants Arnos and Saternos prior to trial, but he did know that these two officers were aware of his having been robbed on July 11th. There is no allegation that their trial testimony did anything but corroborate plaintiff's own story. Accordingly, we must affirm the dismissal as to these defendants.
 
 C. Defendants Rochford and Conlisk
 
 37
 The district court granted summary judgment in favor of defendants James Rochford and James Conlisk, present and past Chiefs of Police of the City ofChicago. As noted in the court's memorandum opinion, plaintiff has done no more than list these individuals as defendants in the caption of his complaint. No facts pertaining to them are alleged in the body of the complaint, certainly none alleging personal involvement in the wrongdoing attributed to their subordinates, such as is required to maintain a section 1983 claim. Adams v. Pate, 445 F.2d 105 (7th Cir.1971). In fact, defendants Rochford and Conlisk have filed sworn affidavits asserting that they had no personal involvement in the activities which gave rise to plaintiff's claim. On appeal, plaintiff has made no argument that the district court erred in granting summary judgment. In this light, and because we agree with the district court's findings that the papers filed in this case present no genuine issue as to any material fact, we affirm the grant of summary judgment as to these two defendants.
 
 D. Defendants Elrod and Woods
 
 38
 Defendants Richard Elrod and Joseph Woods are the past and present Sheriffs of Cook County. Here again, though plaintiff lists these individuals as defendants in the caption of this case, he makes no specific allegations of wrongdoing on their part, or personal involvement in the wrongdoing of others, in the body of his complaint, nor does he, on this appeal, argue error in the district court's decision to dismiss. We agree with the district court, that absent any such allegations, the complaint must be dismissed as to these defendants.
 
 E. Defendant Weil
 
 39
 As against defendant, Daniel Weil, former Superintendent of the Cook County Department of Corrections, plaintiff alleges that defendant's refusal to allow plaintiff's counsel to photograph plaintiff shortly after his arrest, and thus to obtain evidence to corroborate his own testimony that he had been beaten by unknown assailants, deprived plaintiff of his constitutional right to the effective assistance of counsel in the making of his defense. The district court found that Weil, as Superintendent of the Cook County Department of Corrections, was vested with the authority to promulgate such rules and regulations as he deemed proper for the administration of the institutions over which he exercised control, and therefore, that the refusal to allow plaintiff's counsel to photograph plaintiff was within his discretion and did not constitute violation of a right cognizable under section 1983.
 
 
 40
 We cannot agree. A defendant's right to prepare the best defense he can and to bring to the court's attention any evidence helpful to this case is constitutionally protected. The Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) recognized the right of a defendant to have access to exculpatory evidence in the hands of the prosecutor. We believe a defendant also has the right to preserve possibly exculpatory evidence and that, to the extent the government or its agents frustrate such preservation, the defendant has a constitutional claim.
 
 
 41
 In this case, it was important to the defense plaintiff made at the Lehmann murder trial that he show he had been beaten and twice robbed on the day he was arrested for the crime. His own testimony to this effect would have been corroborated had he been able to introduce a photograph of himself taken shortly after his arrest and showing the physical effect of the claimed beating. Thus, for defendant Weil to deprive plaintiff of the opportunity to obtain such a photograph, impaired plaintiff's right to present his defense.
 
 
 42
 We recognize that there will be questions as to the extent of damages for which defendant Weil is responsible. The essential problem is the extent to which the lack of a photograph contributed to the guilty verdict and, thus, to plaintiff's imprisonment. This matter is complicated by the fact that, as both parties seem to agree, at some point before trial McDonald's counsel sought a court order to allow him to photograph plaintiff, and this request was denied. It might be that at that point, defendant Weil would no longer be responsible for plaintiff's inability to obtain a photograph and therefore not be liable for full damages. But we do not believe it appropriate for us here to attempt to regulate the apportionment of the responsibility for plaintiff's inability to obtain a photograph of himself. Neither do we foreclose Weil from establishing, if he can, a Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) defense. We conclude only that insofar as defendant Weil prevented plaintiff's counsel from photographing his client, plaintiff has stated a cause of action against him. Accordingly, we reverse the district court's dismissal of the action against Weil.V. Adequacy of Plaintiff's Claims Against Governmental Entities
 
 
 43
 Plaintiff has no cause of action, created by 42 U.S.C. Sec. 1983, against the City of Chicago, Cook County, or the Department of Corrections of Cook County. This proposition rests on statutory construction, a municipality not being a "person" as the word is used in that statute. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Accord Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).
 
 
 44
 A cause of action (without benefit of 42 U.S.C. Sec. 1983) may be implied in favor of one who suffers injuries as a result of a government agent's violation of the Constitution. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). If the requisite jurisdictional amount is present, the cause of action may be prosecuted in a federal court. Hostrop v. Bd. of Jr. College Dist. No. 515, 523 F.2d 569, 577 (7th Cir.1975).
 
 
 45
 In Hostrop, the governmental entity was sued, and held liable, while a Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) defense was sustained as to the individual members of the governing board. The governing board of the entity had itself taken the action which deprived plaintiff of a property right, without due process. Thus the responsibility of the entity arose directly out of the action of its governing board. It might well not be an unreasonable extension of Hostrop to hold a similar governmental entity liable for the deprivation of a constitutional right perpetrated by an inferior employee when his act was required by a policy adopted by the governing board.
 
 
 46
 With respect to the City of Chicago, as already explained, there is no adequate allegation of a deprivation of plaintiff's constitutionally protected rights by any agent of the City. Although we have found a sufficient claim stated against Weil, there is no allegation that any policy of Cook County (or of the County Department of Corrections, if that be deemed a separate entity) required Weil to refuse an opportunity to photograph plaintiff.
 
 
 47
 It seems to us that Cook County (or the Department) did not itself violate the Constitution, nor impair plaintiff's constitutionally protected rights. If liability is to be imposed on it under federal law for injury caused by Weil's act, it would have to be on a theory that imposition of vicarious liability on a governmental entity is an appropriate and necessary prophylactic against constitutionally improper acts of its agents.
 
 
 48
 We are not aware of any decision which holds a local government entity liable in money damages for the constitutional deprivations committed by its agents, independently of any official policy. The principle of respondeat superior has not been applied under Sec. 1983, although it must be noted that the opportunity to apply it to municipal bodies was foreclosed by the statutory interpretation that such bodies were not subject to Sec. 1983 liability. But see Note, Damages Remedies Against Municipalities for Constitutional Violations,5i 89 Harv.L.Rev. 922, 931-35 (1976).
 
 
 49
 It can be argued with some force that imposition of liability on the governmental entity is desirable in order to promote obedience to the Constitution by agents and employees. If those who manage a government entity know that individuals whose rights are violated by agents and employees will receive compensation out of the public treasury, those in charge will have an incentive to provide supervision to keep constitutional violations to a minimum. The exclusionary rule is a somewhat comparable judicially imposed prophylactic. When an officer who acts under color of state law obtains evidence in violation of the Constitution, the state and public, and not just the officer, must "atone" for the wrongdoing by being denied the use of the evidence against the person wronged. E.g. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); cf. Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).
 
 
 50
 Notwithstanding the argument just outlined, however, we consider that the implication of a federal judicial remedy to the extent which would be necessary to impose liability on Cook County here would be out of harmony with the doctrine built up under Sec. 1983, a drastic extension of the decided cases, adn we are not persuaded of the existence of a sufficient need.
 
 VI. Conclusion
 
 51
 We reverse the dismissal as to defendant Daniel Weil and remand for further proceedings. In all other respects we affirm.
 
 
 52
 Costs on this appeal are allowed to the State of Illinois and the City of Chicago. As to defendants Cook County, Edward Hanrahan, Bernard Carey, Joseph Woods, Richard Elrod, the Cook County Department of Corrections and Daniel Weil, all represented by the State's Attorney, such defendants are allowed two-thirds of their costs on appeal, and plaintiff is allowed one-third of his costs.
 
 AFFIRMED IN PART; REVERSED IN PART
 
 
 *
 The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States, sat by designation. This opinion was approved by Mr. Justice Clark and delivered to the Clerk for publication June 8, 1977 prior to his death
 
 
 **
 Senior Circuit Judge John S. Hastings heard oral argument and participated in the conference of the court, but died before this opinion was submitted to him for approval
 
 
 [1]
 Plaintiff's counsel, at oral argument, conceded that he could cite no case thus far decided which so interpreted due process