Arthur PERRY, Jr., Plaintiff,

v.

Richard ELROD, Winston Moore, and John Blanks, Defendants.

No. 76 C 3960.

United States District Court, N. D. Illinois, E. D.

Aug. 19, 1977.

Gary S. Laser, IIT/Chicago-Kent College of Law, Legal Services Center, Chicago, Ill., M. Steven Lubet, Northwestern Legal Assistance Clinic, Chicago, Ill., for plaintiff.

Bernard Carey, State's Atty., by Frederic B. Weinstein, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff, Arthur Perry, Jr., brings this action against Richard Elrod, Sheriff of Cook County, Winston Moore, Executive Director of the Cook County Department of Corrections, and John Blanks, Chief of Security of the House of Corrections, for violating his First and Fourteenth Amendment rights, through 42 U.S.C. § 1983. He seeks declaratory and injunctive relief, and money damages. Jurisdiction is based upon 28 U.S.C. §§ 1343(3), (4), and 2201. Defendants Moore and Blanks have answered the complaint; defendant Elrod has moved to dismiss or in the alternative for summary judgment. This motion, which we treat as

a motion for summary judgment, Fed.R. Civ.P. 12(b)(6), is ready for decision.

Plaintiff is a Deputy Sheriff and has been employed by the Cook County Department of Corrections for six years. On September 15, 1976 he and others picketed the front gates of Division IV of the House of Corrections in protest of the policies of defendant Winston Moore. At roll call on September 17, after requesting and receiving permission to address the assembly, plaintiff again protested certain actions of Moore. On September 20, plaintiff was transferred from the First Detail, an 8 a.m. to 4 p.m. shift, to the Second detail, a 4 p.m. to 12 a.m. shift.

On October 5, 1976, an article in the Chicago Sun Times reported plaintiff's September 17 speech and plaintiff's belief that his transfer was punishment for the speech. Two days later, plaintiff was transferred to tower guard duty, an assignment generally regarded as undesirable. While on this duty, plaintiff aggravated scar tissue from surgery necessitated by a 1973 gunshot wound incurred in the line of duty. Twice he reported to a hospital for treatment of the aggravation.

On October 15, 1976, plaintiff was ordered to attend a six-week training class for Department guards, a class usually attended by inexperienced guards. Plaintiff and the other experienced guards assigned to this class were leaders of the protest against defendant Moore's policies. Plaintiff repeatedly requested transfer back to the light duty assignments he held prior to these events.

After we entered a temporary restraining order, the parties stipulated that plaintiff would work only certain specified duty assignments during the pendency of this action.

The essence of plaintiff's complaint against defendant Elrod is briefly stated. Plaintiff alleges that defendants Moore and Blanks transferred him to night duty, tower duty, and the training class as punishment for his exercise of his First Amendment rights, and that Moore and Blanks have a

policy and practice of punishing correctional officers for exercising their free speech rights. Plaintiff further alleges that Elrod has a statutory obligation to administer the Department of Corrections and that he was aware of Moore's punishment of the plaintiff and other correctional officers for the exercise of their constitutional rights. Notwithstanding this awareness and his duty to administer, plaintiff alleges that defendant Elrod has refused to take corrective measures.

Defendant Elrod has submitted his affidavit stating that he had no knowledge of plaintiff's work or shift assignments, or of any matters related to plaintiff's cause of action, before the complaint was filed on October 27, 1976. The affidavit also states his belief that even if he had known of plaintiff's claims, he lacked the authority to reverse plaintiff's work assignments. Defendant Elrod's Motion, affidavit.

Plaintiff submits two counteraffidavits. In the first, James Hartsfield, a personnel representative employed by the Department of Corrections, states that he had several phone conversations with defendant Elrod, before plaintiff filed his lawsuit, during which he and Elrod discussed Moore's punishment of correctional officers for their protests of Moore's policies and practices. Hartsfield specifically remembers discussing plaintiff as one of the officers retaliated against by Moore. Plaintiff's Memo in Opposition, Exh. A. In the second affidavit, McKinley Avery, a correctional officer, states that it is his belief that defendant Elrod attended a meeting to discuss Moore's harassment of correctional officers who opposed him. *Id.* Exh. E. Thus, the counteraffidavits raise a material issue of fact regarding defendant Elrod's knowledge and involvement in the activities of which plaintiff complains.

The issue raised by the motion is whether the allegations of knowledge and refusal to take corrective action state a claim, and, if they do, whether any material issues of fact remain for trial.

Supervisory officials are not liable for civil rights violation committed by their subordinates under a theory of respondeat superior. *Hampton v. City of Chicago,* 484 F.2d 602, 610 (7th Cir. 1973). Personal involvement of the supervisory official is the touchstone of his liability. *McDonald v. State of Illinois,* 557 F.2d 596 (7th Cir. 1977). This requirement is met if the plaintiff alleges that the constitutional deprivation takes place at the direction of the supervisory official or with his knowledge and consent. *See Adams v. Pate,* 445 F.2d 105 (7th Cir. 1971), cited with approval in *McDonald, supra.* Recently, in *Little v. Walker,* 552 F.2d 193, 197 & n.8 (7th Cir. 1977), the court discussed the culpability necessary to state a claim for deprivation of Eighth Amendment rights against supervisory officials.[1] The same standards would by analogy apply to deprivation of rights secured by other amendments. Although mere negligence is insufficient to state a claim, deliberate indifference, manifested by actual intent or by recklessness, provides a sufficient foundation. Actual intent, as used by the Seventh Circuit, encompasses both the specific intent to violate a plaintiff's constitutional rights, and the general intent to perform an act whose natural consequence is the deprivation of the plaintiff's rights. Recklessness is measured only by an objective standard. Here, the Seventh Circuit borrowed the objective test used by the Supreme Court in measuring good faith when the defense of qualified immunity is asserted by a state executive official, *Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975): whether the defendant's conduct evidences such disregard of the plaintiff's established rights that the conduct cannot be characterized as being in good faith. The court further indicated that the defendant's subjective good faith or state of mind is irrelevant to a cause of action based upon recklessness, *id.* n.8, although it would, of

---

1. In *Little,* the plaintiff's rights were violated by other prison inmates subject to the defendants' control. By analogy, the same principles of liability would apply to violations occasioned by the acts of subordinate officials under a defendant's supervisory authority.

course, be relevant to a determination of whether a defendant is entitled to invoke the qualified good faith immunity. *Wood v. Strickland, supra.*

■ Thus, if a supervisory official is deliberately or recklessly indifferent to constitutional violations by his subordinates, or others under his control, his indifference is actionable.

■ As noted, we are faced with conflicting affidavits regarding Elrod's knowledge of the alleged violation by Moore and Blanks. Elrod asserts, however, that even if he had had knowledge of their actions, he believed that he lacked the authority to control their scheduling of plaintiff's work and assignments. Assuming the defendant Elrod honestly held this belief, however, he could still be liable to the plaintiff if the belief was so unreasonable that his refusal to act amounted to reckless indifference. Elrod relies upon a formal legal opinion from the States Attorney of Cook County as the basis for his understanding of his supervisory responsibilities in the Department of Corrections. Defendant Elrod's Motion, Attachment. S.A. Legal Opinion No. 1341 clearly states that the Sheriff possesses the common law power to appoint and to remove employees, and that this power cannot be taken from him. According to the Opinion, the Department of Corrections Act modifies this power by requiring the Sheriff to conform his appointments and removals to certain statutory standards,[2] but the Act does not attempt to take the power away from the Sheriff. The Opinion also indicates that the Executive Director, as chief executive and administrative officer of the Department of Corrections, is responsible for the day-to-day operation of the Department.

Thus, it would seem beyond argument that the Sheriff retains the ultimate authority over appointments and removals, although the Executive Director is charged with the responsibility for the daily affairs of the Department. Assuming that defendant Elrod had notice that Moore and Blanks were engaged in the unconstitutional practice of punishing correctional officers for exercising their First Amendment rights, Elrod's belief that he "had no authority to take action in this matter", Defendant Elrod's Memo, p. 5, is clearly unreasonable, since he retains the authority to remove the offending personnel. Even if the applicable statutes are vague in their details, as Elrod maintains, the Opinion upon which he relies is not. We find incredible the argument that the Sheriff is powerless if the Sheriff knows that the method of work scheduling used by those under his authority violates the constitutional rights of other Department personnel. If Elrod's authority is "so obvious that any reasonable man would be legally bound as knowing" that he possessed it, then his failure to comprehend it is reckless. *Cf. Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1045 et al., (7th Cir. 1977) (the danger of misleading buyers under Rule 10b–5 must be so obvious that any reasonable man would be legally bound as knowing it in order to constitute recklessness). We find that his authority to appoint and remove officials is that obvious. Thus, defendant Elrod's belief, even if found by the trier of fact to be honest, cannot avoid his liability for reckless indifference to plaintiff's rights.

*Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), is not to the contrary. In *Rizzo,* The Supreme Court implicitly reversed the trial court's finding of a pattern and practice of constitutional violations by the defendants' subordinates. Without such a pattern, "there was no affirmative link" between the conduct of the subordinates and the supervisory officials, upon which the plaintiffs could rely to show the officials' "authorization or approval" of the misconduct. 423 U.S. at 371, 96 S.Ct. 598. If proved, however, a pattern of subordinate misconduct suggests the inference that

---

2. We note that Ill.Rev.Stat. ch. 125, § 212 specifically provides that the Executive Director is subject to removal for cause after a public hearing. Thus, although the Sheriff apparently could not remove the Executive Director by a unilateral act, we see nothing which prevents the Sheriff from initiating the removal process if he finds cause.

a supervisory official with knowledge of the pattern has acquiesced or colluded in it. *Delaney v. Dias,* 415 F.Supp. 1351, 1354 (D.Mass.1976). The plaintiff here alleges such a link, and must be afforded an opportunity to prove it. *Curtis v. Voss,* 73 F.R.D. 580 (N.D.Ill.1976).

Defendant Elrod also contends that the plaintiff's transfers can be justified by administrative concern over a manpower shortage on the 4 p.m. to 12 a.m. shift, and by various other valid administrative considerations. Defendant Elrod's Reply at 4–5; *see Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The question of the defendants' motivation is a disputed issue of fact which must be resolved at trial.

Finally, we reach the question of whether defendant Elrod is entitled to invoke the good faith qualified immunity available as a defense in actions brought pursuant to 42 U.S.C. § 1983. *Wood v. Strickland, supra; Knell v. Bensinger,* 522 F.2d 720 (7th Cir. 1975). The qualified immunity involves a two-pronged test with subjective and objective elements. First, the defendant must have acted sincerely, without malice, and in the belief that he was doing right. Second, he must not act in ignorance or with disregard of settled principles of constitutional law. *Wood, supra,* 420 U.S. at 321–22, 95 S.Ct. 992. The first test requires a subjective analysis of the defendant's state of mind, while the second involves an objective analysis of current constitutional doctrine. The defendant must meet *both* tests to be immune from liability for money damages. *Knell, supra,* 522 F.2d at 725; *Little, supra,* 552 F.2d at 198.

Defendant Elrod's claim that he was unable to take any action against Moore and Blanks is relevant to his subjective good faith or state of mind. The resolution of this issue, however, must be postponed for trial. Elrod's assertion that he had no knowledge of the plaintiff's com-

plaints until the filing of this action is contradicted by Hartsfield's statement that he and Elrod discussed the plaintiff as one of the targets of Moore's retaliatory punishments. If the trier finds that the defendant had knowledge of the alleged constitutional violations, then his reasons for refusing to take action must be explored,[3] provided that the second branch of the immunity test is met.

The parties' briefs did not address the second prong of the immunity defense, or whether current constitutional principles were sufficiently clear at the time of the alleged violation that it is fair to charge the defendant with disregarding the plaintiff's established rights. We note in passing that it has long been settled that a public employee does not forfeit his First Amendment freedoms. *Pickering v. Bd. of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Choudhry v. Jenkins,* 559 F.2d 1085 (7th Cir. 1977).

In conclusion, defendant Elrod's motion for summary judgment is denied.

---

**3.** Defendant must be culpable of more than negligence. *McDonald, supra; Bonner v. Coughlin,* 545 F.2d 565 (7th Cir. 1976).