Sandra Yvonne Evans JAMISON, as Administrator of the Estate of John Jamison, Deceased, Plaintiff-Appellant,

v.

Richard J. McCURRIE et al., Defendants-Appellees.

No. 76-1972.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1977.

Decided Nov. 18, 1977.

Stanley M. Cahn, Daniel P. Nagle, Chicago, Ill., for plaintiff-appellant.

Peter Fitzpatrick, William R. Quinlan, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and HOLDER, District Judge.*

FAIRCHILD, Chief Judge.

This is a civil rights action under 42 U.S.C. § 1983 and the Fourteenth Amendment against the City of Chicago and fourteen of its police officers. At the close of the trial, the district court granted the City's motion for a directed verdict and the jury returned a verdict for all the individual defendants. On this appeal the plaintiff contends that (1) the dismissal of the City was improper; and (2) a comment by the trial judge about a suit pending against the City in state court was so prejudicial that a new trial is necessary. We disagree and affirm.

Early on the morning of January 1, 1972, James O'Malley, a Chicago fireman with a history of mental illness, shot and killed John Jamison in a pizzeria. Jamison's widow brought this action against various City of Chicago police officers, claiming that their failure to take O'Malley into custody once they had been informed that he was

---

* District Judge Cale J. Holder of the Southern District of Indiana is sitting by designation.

behaving dangerously denied Jamison his Fourteenth Amendment right not to be deprived of life without due process of law. Although the evidence at trial was in conflict, there was testimony that James O'Malley's son, Daniel, had visited the Eighth District Police Station on each of the three days preceding the shooting to report that his father had threatened him and his invalid brother with a gun. Despite the son's repeated requests that something be done, the police did not respond before O'Malley killed Jamison.

Before trial plaintiff had sought leave to include two claims against the City of Chicago, the first for negligent failure to train and supervise and the second based on vicarious liability for the unconstitutional acts of its police officers. The late Judge McLaren denied leave to amend, stating that it was unjustified to create a federal constitutional right to monetary damages from a municipality for non-systematic failure to arrest. *Jamison v. McCurrie*, 388 F.Supp. 990, 994 (N.D.Ill.1975). He later granted plaintiff's motion for reconsideration with respect to the *respondeat superior* claim, accepting her claim of jurisdiction under 28 U.S.C. § 1331, apparently on the strength of *Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975).

Following Judge McLaren's death, the case was reassigned to Judge Perry. After the presentation of all the evidence at trial, Judge Perry directed a verdict in the City's favor. In his closing argument, defense counsel informed the jury that the City was no longer a defendant because the judge had ruled it could not be held liable under the Civil Rights Act. At that point the judge intervened and stated:

> "So that there is no misunderstanding, in the State Court there is a suit pending against the City under the State law, and I have ruled that there is no case under

the federal law, so you do not have to let that influence you one way or the other. That will take care of itself in the State Court, so far as that is concerned, so you can forget that you ever heard about a suit against the City. You are only handling the suit against the defendants, without prejudice either way. You do not have to decide it."

### I

■ The dismissal of the City was proper. Because it is not a person within the meaning of the statute, a municipality may not be sued under § 1983. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). But plaintiff also asserts that the defendant officers' failure to restrain O'Malley gave rise to a Fourteenth Amendment claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that the City should be held liable as their employer. We doubt, but need not decide, whether the evidence would have supported a jury finding that their inaction deprived John Jamison of any Fourteenth Amendment rights. In any event, the individual officers' omissions in this case are not of the kind which would warrant holding the City liable for monetary damages. In *McDonald v. State of Illinois*, 557 F.2d 596 (7th Cir. 1977), we found that it would be inappropriate to apply the *respondeat superior* principle to hold a county liable where no official policy required its employee to deprive the plaintiff of his constitutional rights.[1] Similarly, there was no evidence here that any rule, regulation or stated policy of the Chicago Police Department required its officers to ignore Daniel O'Malley's pleas that they take his father into custody. In *McDonald* we also noted the argument for

---

1. *See also Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), requiring an affirmative link between police misconduct and officials' adoption of a plan or policy authorizing or approving such misconduct before the officials could be held liable under § 1983, and *Kite v. Kelley*, 546 F.2d 334 (10th Cir. 1976),

interpreting the "affirmative link" requirement of *Rizzo* to mean that in a *Bivens* type action there must be a showing that a superior official participated or acquiesced in his agents' constitutional violations before he could be held liable for them.

486

imposing liability on local governmental entities for their employees' acts where it might serve as an incentive to minimize those unconstitutional practices. 557 F.2d at 604. But here there is no indication that the City or police department officials could have instituted any plan or training program which would have made its officers more willing to tackle a belligerent, irrational, ex-Golden Gloves boxer like James O'Malley.

## II

■ Plaintiff contends that the trial court's reference to her suit against the City in state court was so prejudicial as to require reversal. If the jury thought she could recover from the City in that action, she argues, they would be reluctant to find liability and assess damages against individual officers less able to pay them. We cannot accept this view.

■ Had the jury resolved disputed facts in plaintiff's favor, they could have concluded that the individual defendants negligently failed to take action to restrain O'Malley, a man they knew to be irrational and violent. Simply stated, her case against them amounts to a claim for redress under the Constitution because O'Malley killed another member of the general public, her husband. The trial court denied a motion made after trial to add to the complaint allegations of wanton and willful misconduct, and plaintiff does not contest this ruling on appeal. There is no constitutional cause of action for mere negligence on the part of police officers in a case such as this. The plaintiff must show that their misbehavior was either intentional or in reckless disregard of his constitutional rights. *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976). Our holding in *Bonner* undermines the district court cases on which plaintiff relies,[2] although we noted that police nonfeasance, if purposeful, might be the basis

for a constitutional tort claim. 545 F.2d at 568–69.

Therefore we have great doubt that a jury verdict for plaintiff could stand in any event. However, we need not reach the question, because we do not find that in the context of this case, the trial court's remark constituted reversible error. When the judge made the remark, some explanation of the City's disappearance from the case was necessary. Perhaps it would have been preferable for the jury to learn first from the judge, rather than from the arguments of counsel, that they would not be asked to consider the evidence they had heard against the City. The judge could have communicated this point to them without mentioning the plaintiff's other case against the City, but he later cautioned them to disregard that fact completely. On review of the entire record, we conclude that the comments about the state court proceeding cannot be deemed to have affected the outcome.

The judgment appealed from is AFFIRMED.

**2.** Plaintiff points to language in *Huey v. Barloga*, 277 F.Supp. 864, 872–73 (N.D.Ill.1967), to the effect that allegations of police officers' negligent failure to perform their duty might give rise to a cause of action under § 1983, as well as *Williams v. Brown*, 398 F.Supp. 155

(N.D.Ill.1975) and *Collum v. Yurkovich*, 409 F.Supp. 557 (N.D.Ill.1975), holding that allegations of police officers' unconstitutional conduct did state a claim against a municipality under the doctrine of *respondeat superior*.