709 F.2d 471
 CONTINENTAL INSURANCE CO., Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF TRANSPORTATION, Illinois Secretary of
Transportation, and Tyrone C. Fahner, Attorney
General of the State of Illinois,
Defendants-Appellees.
 No. 82-1915.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 4, 1983.
Decided June 8, 1983.
 
 Michael D. O'Keefe, Thompson & Mitchell, East St. Louis, Ill., for plaintiff-appellant.
 Kathryn Spalding, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before BAUER and POSNER, Circuit Judges, and JAMESON, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 This is a suit under section 1 of the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, and the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, to declare that section 8(d) of the Illinois Court of Claims Act, Ill.Rev.Stat.1981, ch. 37, p 439.8(d), violates the equal protection clause of the Fourteenth Amendment by placing a $100,000 limit on the state's liability in a tort suit not arising out of the operation of a motor vehicle but no limit on the state's liability in a motor-vehicle tort suit. Other federal constitutional claims are also alleged, but as they are not mentioned in the appeal we shall not discuss them. The district court dismissed the complaint on the ground that the Eleventh Amendment confines the plaintiff to state court.
 
 
 2
 A ship insured by the plaintiff was damaged when it collided with a bridge operated by the Illinois Department of Transportation. The plaintiff paid the ship's owner $259,000 on the insurance policy, acquired in return the owner's tort rights arising out of the accident, and sued the state in the Illinois Court of Claims for $259,000, alleging that the accident had been caused by the negligence of Department of Transportation employees in operating the bridge. At the same time, the plaintiff filed the present suit, pending the outcome of which the Court of Claims action has been stayed.
 
 
 3
 The only defendants named in this suit are the Department of Transportation, its head, and the Attorney General of Illinois; and this may create a jurisdictional difficulty. Although the plaintiff, if it won this suit, presumably could get a judgment that would forbid these defendants to object to the Illinois Court of Claims' awarding the plaintiff more than $100,000 in damages, or to refuse to pay such an award if it were made by the Court of Claims, such a judgment would not put a cent in the plaintiff's pocket. The Court of Claims cannot award the plaintiff more than $100,000--any higher award would be beyond the court's jurisdiction--whatever position these defendants take before it. It thus looks as if the judgment that the plaintiff is seeking would not do it any tangible good, in which event the district court had no jurisdiction of this action. Maybe the plaintiff should have named the judges of the Court of Claims as defendants, because it is they whom it wishes to bind, or even the members of the state legislature.
 
 
 4
 To this it may be replied that the Illinois Court of Claims would almost certainly comply with a federal court decree even if its judges were not named as defendants; that not naming them (and, a fortiori, not naming the state legislators) as defendants is no more than a tactful gesture designed to minimize the frictions inherent in a federal system; and that the Court of Claims judges have less interest than the state's executive officers in protecting the state treasury and therefore could not be counted on to defend the liability limitation as vigorously. But there may be a more direct reply. If it is these defendants who write the checks to winning plaintiffs in tort actions against the state, a decree in this suit would provide adequate relief against the alleged constitutional violation, by preventing the defendants from paying motor-vehicle victims more than non-motor-vehicle victims. Although such a decree would not provide direct relief to the plaintiff, it might provide indirect relief by inducing the state legislature to rethink the liability limits, and maybe raise the limit on non-motor-vehicle cases rather than letting that limit govern motor-vehicle cases. But we do not know whether these defendants have the check-writing responsibility; and we suspect they do not, that it is rather the Illinois Department of Finance that does, in which event the plaintiff really has named the wrong defendants.
 
 
 5
 Interesting and challenging as the question of the proper defendants in this case is, however, we need not wrestle it to the ground. To affirm the dismissal of the complaint because it named the wrong parties defendant would not bring the case any closer to ultimate resolution. The plaintiff would go back and ask leave of the district court to reopen the case to allow it to amend its complaint; the court, if it granted leave, as no doubt it would, would then dismiss the amended complaint on the same ground that it had dismissed the original complaint; and the case would come back to us in a year or two in the same posture as it is in now, except for a change of defendants' names. To avoid a lot of pointless paper shuffling, we shall go on and decide whether a complaint suitably amended to name all necessary defendants could withstand a motion to dismiss.
 
 
 6
 The Eleventh Amendment bars suing a state in federal court without the state's consent, and the State of Illinois has not consented to be sued on tort claims in federal court, or indeed anywhere but in the Illinois Court of Claims. Ill.Rev.Stat.1981, ch. 37, paragraphs 439.8, 439.8(d). But this is not a suit for damages; the plaintiff's damage suit is pending in the Court of Claims. This is a suit to forbid state officers to treat different types of tort plaintiff differently. A judgment for the plaintiff need not cost the state a penny, as the state could comply with it as fully by placing a $100,000 limit on damages payable in motor-vehicle tort cases against the state as by removing the $100,000 limit on damages in other types of tort case against the state. Hence this suit is no more barred by the Eleventh Amendment, see Currie, Federal Jurisdiction 172 (1981), than any other federal court action brought under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and the thousands of cases following it, to enjoin unconstitutional behavior of state officers. This point would be transparent if the plaintiff were presenting a more dramatic claim of unconstitutional treatment than discrimination between motor-vehicle and non-motor-vehicle tort plaintiffs. A black person challenging a provision of the Illinois Court of Claims Act that limited the state's liability on tort claims to $50,000 in damages if the victim was black and $100,000 if he was white could not ask a federal court to award him $100,000 in damages against the state. The Eleventh Amendment, which the Fourteenth Amendment did not repeal, would bar such an award. But he could ask the court to declare the differential unconstitutional.
 
 
 7
 However, if the basis of our conclusion that the Eleventh Amendment does not bar this action is that the state could comply with a ruling that the $100,000 limitation in non-motor-vehicle cases was unconstitutional by extending the limitation to motor-vehicle accidents, and the state did so, the plaintiff would have gained nothing tangible from its victory. True, it is as or more likely that the state would respond to such a declaration by removing the $100,000 limitation or by adopting a higher limitation applicable to all accidents rather than by limiting victims of motor-vehicle accidents to $100,000. But this may seem only to underscore the point that either the plaintiff will end up with nothing, in which event the suit will be moot, or the state treasury will end up the poorer because of the suit, in which event the policy of the Eleventh Amendment will be thwarted if the suit is allowed to go forward. Either way, it might seem, the suit is barred. But we think not. On the one hand, the fact that the plaintiff may get additional damages as a result of this suit is enough to prevent the suit from being moot even though the plaintiff is not certain to get them, on the same principle that allows an appeal from a judgment of dismissal even though it is uncertain whether the plaintiff, if he gets the judgment reversed, will prevail on remand. On the other hand, the fact that the state may end up paying money to the plaintiff as a result of the suit does not bring the Eleventh Amendment into play because such a consequence of a decree equitable in form--"such an ancillary effect on the state treasury"--"is a permissible and often an inevitable consequence of the principle announced in Ex parte Young." Edelman v. Jordan, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974).
 
 
 8
 Thus the Eleventh Amendment does not bar this suit. Even so, considerations of judicial economy unrelated to the Eleventh Amendment might warrant a dismissal, or at least stay, of the suit in light of the pending suit in the Illinois Court of Claims, since only that court can give the plaintiff the complete relief that it seeks, which is not just a declaratory judgment but damages of $259,000. See Evans Transport. Co. v. Scullin Steel Co., 693 F.2d 715, 719 (7th Cir.1982). But this assumes that the Illinois Court of Claims has jurisdiction to consider the plaintiff's constitutional challenge to the Illinois Court of Claims Act, for if it does not, then the Court of Claims cannot give the plaintiff the relief it is seeking. It does not. More an administrative agency than a court, see Note, Tort Claims Against the State of Illinois and Its Subdivisions, 47 NW.U.L.Rev. 914, 915-18 (1953), the Illinois Court of Claims has no power to determine the constitutionality of its organic statute, Gossar v. State, 24 Ill.Ct.Cl. 183 (1961); and since there is no appeal from a Court of Claims determination adverse to the claimant, Seifert v. Standard Paving Co., 64 Ill.2d 109, 355 N.E.2d 537 (1976), there is no way to get any state court to decide the plaintiff's constitutional claim if it proceeds only in the Court of Claims. (Therefore, even if exhaustion of remedies were required in section 1983 cases, as with an immaterial statutory exception it is not, Patsy v. Board of Regents, --- U.S. ----, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), it would not be required here; the futility exception would come into play.) True, the plaintiff could bring a declaratory judgment action in a state court of general jurisdiction, see Ill.Rev.Stat.1981, ch. 110, p 2-701; Owens v. Green, 400 Ill. 380, 81 N.E.2d 149 (1948)--an action just like the present one. But since this route would yield no net judicial economy, the abstention principle of Evans would not support our making the plaintiff take it.
 
 
 9
 The district judge expressed misgivings about dismissing the suit on jurisdictional grounds but felt bound by our decision in McDonald v. State of Illinois, 557 F.2d 596, 601 (7th Cir.1977), to which he might have added Garrett v. State of Illinois, 612 F.2d 1038 (7th Cir.1980), which reached the same result. McDonald was a section 1983 suit for damages against the State of Illinois and a number of its officers, challenging, like this suit, the damage ceilings in the Illinois Court of Claims Act. We held that McDonald's suit against the state was barred by the Eleventh Amendment. Our further statement that "we believe it must be the Court of Claims that considers the constitutionality of any attempt by the state legislature to limit the amounts it can award in damages," 557 F.2d at 601, must like all judicial statements be read in context--the context of a suit for damages against the state, a suit that could be brought consistently with the Eleventh Amendment only in the Illinois Court of Claims. We did not hold that the Court of Claims is the only court that can ever be asked to determine the constitutionality of its organic act. Such a holding would put grossly unconstitutional practices, such as the racial difference posed hypothetically earlier in this opinion, beyond any possibility of remedy, by limiting the decision of constitutional questions to a court powerless to decide them. The statement in Garrettthat "only the Illinois courts can assess the constitutionality of its own statute in the first instance," 612 F.2d at 1040, must similarly be read in context--a suit for damages against the state, as was McDonald. Neither decision mentioned the Court of Claims' inability to determine the constitutionality of its organic statute, but there was no occasion to do so. Both were money suits against the state and hence were barred by the Eleventh Amendment from being brought in federal court.
 
 
 10
 The state asks us, if we hold as we do that there is federal jurisdiction, to go on to decide the merits of the plaintiff's constitutional challenge. It would not be appropriate for us to do so when the suit was dismissed on the pleadings, with no opportunity for the plaintiff to produce evidence, or argument, or the kind of "legislative facts" associated with a "Brandeis brief," that might persuade the district court or this court that the distinction between motor vehicle and other types of tort suit is unconstitutional. We do not want to raise false hopes in the plaintiff, however, and therefore note for the guidance of the district court and the parties on remand that since the victims of the alleged unequal treatment--persons who have the misfortune to be the victims of a tort committed by the State of Illinois or its employees other than by means of a motor vehicle--are not the kind of vulnerable minority for which the equal protection clause as interpreted by the Supreme Court expresses a special solicitude, the test of constitutionality is simply whether there is some rational basis for the different treatment. See, e.g., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 644 F.2d 594, 609 (7th Cir.1981). Probably there is. Since motor vehicle accidents are so much more frequent than other types of accidents in which state employees are involved, the mathematical law of large numbers enables the state to estimate and provide for its liability without placing any limitation on the amount of damages that can be awarded in an individual case. But all arguments on the merits of the plaintiff's claims are for the district court's consideration in the first instance.
 
 
 11
 The district court's judgment is reversed and the case remanded for further proceedings consistent with this opinion. The plaintiff should be allowed to amend its complaint to add such additional defendants as may be necessary for complete relief in the event that it prevails on the merits.
 
 
 12
 REVERSED AND REMANDED.
 
 
 
 *
 Hon. William J. Jameson of the District of Montana, sitting by designation