**COMPUTER LEASCO, INC., Plaintiff,**

v.

**VOLVO WHITE TRUCK CORPORATION and Volvo GM Heavy Truck Corporation, Defendants.**

No. 91–75273.

United States District Court, E.D. Michigan, S.D.

May 11, 1993.

Edward J. Gudeman, Ronald M. Barron, Barron & Rosenberg, Bloomfield Hills, MI, for plaintiff.

Thomas F. Myers, Garan Lucow, Detroit, MI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

GADOLA, District Judge.

On April 2, 1992, plaintiff filed a second amended complaint. On May 14, 1992, a stipulation and order was filed dismissing defendant Volvo White Truck Corporation. Defendant Volvo GM Heavy Truck Corporation filed an answer to the second amended complaint on May 19, 1992. On February 8, 1993, defendant filed the instant motion to dismiss and motion for summary judgment. Plaintiff responded March 15, 1992. On March 22, 1993, defendant filed a reply. Oral argument was heard on April 8, 1993.

### I. Facts

In 1985, Computervision leased to Volvo White Corporation certain computer equipment and software for use in its business. In 1986, plaintiff purchased that same computer equipment from Computervision Corporation and then leased that equipment to defendant Volvo White Corporation which later became Volvo GM Heavy Truck. Exs. 1, 2 and 7 to Defendant's Brief. The software that was to be used on the equipment was licensed to plaintiff so that Computervision maintained ownership rights in the software. Ex. 3 to Defendant's Brief.

Attached to the master lease agreement were several schedules listing the equipment leased, the amount to be paid quarterly (in advance), and the expiration date of the lease; pertinent to this case are schedules 2A, 3, 10, 12, and 13. Ex. 4 to Defendant's Brief. Upon the expiration of each schedule, defendant had the option to purchase the equipment at fair market value or to renew

the lease at 90% of the original rental rate or at fair market rental value, whichever was lower. *Id.* Schedules 2A and 3 both expired on March 31, 1991.

On May 25, 1990, defendant sent to plaintiff a letter indicating that at the expiration of lease schedules 2A and 3, defendant wished to exercise its option to purchase the equipment covered by those schedules rather than continue leasing said equipment. Ex. 8 to Defendant's Brief. In the letter, defendant noted its belief that the schedules were to expire on September 30, 1990; in fact, the schedules were set to expire March 31, 1991. *Id.*

On February 27, 1991, defendant sent to plaintiff an offer to purchase the equipment listed in schedules 2A and 3 at a price of $31,550. Ex. 9 to Defendant's Brief. On April 4, 1991, plaintiff made a written counter-offer, offering to sell the equipment for $60,000 plus tax. Ex. 10 to Defendant's Brief. On April 19, 1991, plaintiff sent a letter to defendant stating that plaintiff considered defendant in default. Ex. 11 to Defendant's Brief. The letter further stated that as a result of said default, plaintiff was exercising its right under the Master Lease to accelerate payment on all of the lease schedules covered. *Id.*

On May 3, 1991, defendant responded by letter to plaintiff's claim of default. Defendant indicated that it did not believe it was in default on any provision of the Master Lease. Defendant reminded plaintiff that the parties had been engaged in good faith negotiations for the purchase of the equipment. Defendant gave notice to plaintiff of its intent to return the equipment by June 7, 1991 and to issue a check to plaintiff for $18,373.41 to cover the period April 1, 1991 through June 7, 1991.

Despite plaintiff's claim of default, negotiations for the sale of the equipment to defendant continued through the month of May 1991. Ex. 13 to Defendant's Brief. On June 7, 1991, defendant returned to plaintiff all of the equipment listed in schedules 2A and 3, but did not return the software listed therein. Ex. 12 to Defendant's Brief. Defendant claims that plaintiff has no proprietary inter-

est in the software and that therefore plaintiff was not entitled to possession.

Despite the existence of the licensing agreement between plaintiff and Computervision Corporation whereby Computervision retains all proprietary interests in the software issued to plaintiff and leased to defendant, plaintiff claims to have an ownership interest in this software. Plaintiff attempts to support this claim through attaching to its response two bills of sale dated January 30, 1987 and January 5, 1989, ostensibly between plaintiff and Computervision. Ex. 1 to Plaintiff's Response. The January 30, 1987 bill of sale pertains to "all of the equipment and accessories ... listed on Schedule A [t]hereto." *Id.* The January 5, 1989 bill of sale pertains to "all of the equipment listed in Exhibit A annexed [t]hereto." *Id.* However, neither bill of sale has attached to it any schedule or exhibit.

Plaintiff's counsel admitted at the hearing on this matter that the attachments to these bills of sale are irretrievably lost. Plaintiff's only evidence that these bills of sale covered the software previously licensed to plaintiff by Computervision is found in the affidavit of plaintiff's sole stockholder and chief operating officer, Ferris Haddad. Ex. A to Plaintiff's Response. Defendant, on the other hand, offers the deposition testimony of Karin Ameral, a representative of Computervision. Ms. Ameral attests to Computervision's practice of never passing title to its software. Plaintiff's counsel thus is unable to offer the testimony of the alleged seller of the software to prove that the bills of sale covered software; to the contrary, the alleged seller of the software denies the sale occurred.

Following the return by defendant of the equipment covered by schedules 2A and 3, defendant issued a check to plaintiff in an amount of $18,373.41. Plaintiff admits that this payment was made for the prorated rental of the equipment covered by schedules 2A and 3 for the period of April 1, 1991 through June 7, 1991; and plaintiff admits to receiving and cashing this check. Ex. 25 to Defendant's Brief.

Count I of plaintiff's complaint alleges breach of contract on the part of defendant

Volvo GM Heavy Truck Corporation. The breach allegedly consists of defendant's failure to give timely notice that it was opting to terminate the lease as to the equipment listed in schedules 2A and 3 and its subsequent failure to make timely rental payments on said leases. Count II of the complaint alleges a claim of delivery. Plaintiff claims that it is entitled to possession of the software listed in schedules 2A and 3 and, by virtue of an acceleration clause in the Master Lease, to possession of the equipment listed in schedules 10, 12 and 13. The third and final count of plaintiff's complaint alleges that defendant has been unjustly enriched through its continued use of the software listed in schedules 2A and 3 and through the continued use of the equipment listed in schedules 10, 12 and 13.

In the instant motion for summary judgment, defendant seeks summary judgment as to counts I and II, claiming that there is no genuine issue of material fact as to whether defendant breached the Master Lease and no genuine issue of material fact as to whether plaintiff is entitled to possession of the software listed in schedules 2A and 3 and the equipment listed in schedules 10, 12, and 13. As to plaintiff's Count III claim of unjust enrichment, defendant requests dismissal for failure to state a claim upon which relief can be granted and, in the alternative, moves for summary judgment.

## II. Analysis of Defendant's Motion for Summary Judgment as to Counts I and II

### A. Standard of Review

■ The parties cite to Michigan law as governing the court's decision as to summary judgment. The standard of review for summary judgment motions brought in diversity actions is a procedural matter governed by federal law and not by the law of the forum state. *Schultz v. Newsweek, Inc.,* 668 F.2d 911, 917 (6th Cir.1982). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir. 1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

**B. Count I: The Alleged Breach of Contract**

Plaintiff's claim for breach of contract is based on the specious assertion that defendant failed to notify plaintiff by December 1, 1990 that it wished to terminate the Master Lease Agreement as to schedules 2A and 3. Plaintiff admits to receiving a letter from defendant dated May 25, 1990 wherein defendant clearly stated that at the expiration of schedules 2A and 3, it wished to discontinue the Master Lease Agreement and to purchase the equipment covered by those schedules. Plaintiff argues that because the May 25, 1990 letter incorrectly noted the expiration date of the schedules as being September 30, 1990 rather than March 31, 1991, the notice was ineffective. The court disagrees.

The terms of the Master Lease Agreement provide that the lease "shall continue in force ... until [it] is terminated as to such item of Equipment by either party upon not less than 90 days prior written notice to the other party; ... Any notice of termination given by either party may not be withdrawn without the written consent of the other party." Under these terms, defendant's notice of May 25, 1990 could not have been withdrawn

without the written consent of plaintiff. Plaintiff offers no evidence whatsoever which would support a finding that defendant's notice of May 25, 1990 was rejected by plaintiff as inadequate. To the contrary, plaintiff admits that it entered into negotiations with defendant on February 27, 1991 for the purchase of the equipment. These negotiations lasted at least until April 4, 1991 when plaintiff sent an offer to sell the equipment at a price of $60,000 plus tax.

It wasn't until April 19, 1991 that plaintiff notified defendant that it believed defendant was in default on schedules 2A, 3, 10, 12 and 13 of the Master Lease. The April 19, 1991 letter failed to indicate to defendant the reasons for the alleged default and failed to provide defendant with five (5) days to cure as required by the terms of paragraph 11 of the Master Lease. On May 3, 1991, defendant responded to plaintiff's letter by stating its belief that it was not in default and that it intended to pay $18,373.41 to cover the period from April 1, 1991 through June 7, 1991. By accepting and negotiating that check, plaintiff implicitly consented to the terms under which the check was sent as those terms were set forth in defendant's letter of May 3, 1991.

■ Not every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). In the "new era in summary judgments," *Id.* at 1476, a trial judge is entitled to assess the persuasiveness of the evidence of an implausible claim and to determine whether a reasonable trier of fact could find liability on the basis of such evidence. *Id.* at 1480, n. 21. In the case at hand, the court finds that no reasonable trier of fact could find that the defendant in this case breached the Master Lease Agreement by failing to properly notify plaintiff that it wished to terminate the lease agreement as to schedules 2A and 3 at the expiration of those schedules. The court finds that plaintiff has presented no evidence which would support a factual finding that plaintiff was not adequately notified of defendant's intention to terminate by way of letter dated May 25, 1990 letter.

■ Furthermore, the court finds that no reasonable trier of fact could find that defendant breached the Master Lease Agreement by failing to pay in advance for the quarter beginning April 1, 1991. In this case, the Master Lease as to schedules 2A and 3 was properly terminated but defendant maintained possession of the equipment past the last quarter for which rental on the equipment had been paid. As far as the court can discern from reading the agreement, the Master Lease does not provide for the event in which the lease has been terminated by notice but a holdover in possession has occurred. Defendant made an offer of payment to cover the holdover period. Plaintiff accepted this offer by negotiating defendant's $18,373.41 check. Thus, the court finds that defendant is entitle to summary judgment as to Count I of plaintiff's complaint.

## C. Count II: Claim of Delivery

An action for claim of delivery seeks to recover possession of goods or chattels unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or detention. Mich.Comp.Laws.Ann. § 600.2920. Plaintiff claims that defendant has unlawfully detained the software covered by schedules 2A and 3 and the equipment covered by schedules 10, 12 and 13.

■ The claim for the software is based upon plaintiff's claim to a possessory interest in the software. Defendant denies that plaintiff ever acquired any such possessory interest. Defendant offers as evidence the Licensing Agreement between plaintiff and Computervision whereby Computervision specifically retains its proprietary interest in the software. Defendant also offers the deposition testimony of Ms. Ameral, a representative of Computervision, wherein Ms. Ameral states that Computervision has never sold to anyone a proprietary interest in its software. Plaintiff, on the other hand, offers as evidence of its proprietary interest in the software two bills of sale, discussed *supra*, with attachments missing, and the affidavit of Ferris Haddad, the sole stockholder and chief operating officer of plaintiff, wherein Haddad claims that plaintiff purchased, *inter*

*alia*, the software listed in schedules 2A and 3. Without the exhibits to the bills of sale and with only the testimony of the plaintiff's sole stockholder claiming that the disputed software was included in those sales, the court finds that no reasonable trier of fact could find that plaintiff has a possessory interest in the software. Such finding is further supported by the alleged seller's own testimony that no such sale ever occurred, and by a licensing agreement which specifically states that the plaintiff in this case would have no proprietary interest in the property. Thus, defendant is entitled to summary judgment as to plaintiff's claim of delivery on the software of schedules 2A and 3.

■■■ Plaintiff's claim of delivery on the equipment listed in schedules 10, 12 and 13 is based on plaintiff's exercise of the acceleration clause in event of defendant's default. Because the court finds *supra* that defendant did not breach the Master Lease Agreement, plaintiff is not entitled to acceleration. Therefore, the court finds that plaintiff has no possessory interest in the equipment covered by schedules 10, 12 and 13. Consequently, plaintiff's claim of delivery as to said equipment must fail.

## III. Analysis of Defendant's Motion to Dismiss for Failure to State a Claim, and in the alternative, Motion for Summary Judgment as to Count III

### A. Standard of Review

■■■ Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or 12(c), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965). The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S.

826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.*, 747 F.2d 1062, 1065 (6th Cir.1984).

### B. Count III: Unjust Enrichment

■■■ The essential elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable for the defendant to retain. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652 (1991). Such claims are brought in equity and are to be approached with caution. *Id.*

■■■ In Count III of its complaint, plaintiff states merely that "[d]efendants have been unjustly enriched through their continued use of the aforementioned equipment and software subsequent to the default of April 19, 1991" and "[d]efendants have been unjustly enriched by their continued use of computer equipment and software in schedules 10, 11, 12 and 13." [1] The court finds that as to plaintiff's allegations regarding schedules 10, 12 and 13, plaintiff's pleadings are not specific enough to set forth a claim upon which relief could be granted. Defendant claims that it has continued to make timely quarterly payments as to these schedules. Plaintiff makes no allegation and offers no proof to the contrary. Insofar as plaintiff attempts to allege a claim of unjust enrichment as to the software listed in schedules 2A and 3, the court finds for the reasons set forth *supra* that plaintiff is not entitled to compensation for defendant's use of the software because plaintiff has failed to produce evidence that it holds any possessory interest in the software.

1. Nowhere else in the pleadings does plaintiff mention a schedule 11. Defendant states at page 13 of its brief that there is no schedule 11 and that this is simply a typographical error on the part of plaintiff. Plaintiff does not refute this statement in its response. Therefore, the court will not address plaintiff's unjust enrichment claim as to a schedule 11.

## ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment as to Count I of plaintiff's complaint is **GRANTED.**

It is further **ORDERED** that defendant's motion for summary judgment as to Count II of the complaint is **GRANTED.**

It is further **ORDERED** that defendant's motion for summary judgment as to Count III is **GRANTED** as to plaintiff's claim of unjust enrichment arising out of defendant's use of software listed in schedules 2A and 3.

It is further **ORDERED** that defendant's motion to dismiss Count III is **GRANTED** as to plaintiff's claim of unjust enrichment arising out of defendant's use of equipment listed in schedules 10, 12 and 13.

**SO ORDERED.**