Estate of Charles SMITH, (MDOC#:
122755) Plaintiff,

v.

State of MICHIGAN, et al, Defendants.

No. 02–70121.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 7, 2003.

*OPINION AND ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS, STATE CONSTITUTIONAL CLAIM, JOINT AND SEVERAL LIABILITY CLAIM, AND FOR QUALIFIED IMMUNITY*

ROBERTS, District Judge.

## I. INTRODUCTION

The Complaint in this case was brought by the estate of a prisoner who died allegedly as a result of a lack of medical attention from prison guards, despite notice to them of a serious medical condition. Defendants' have filed a Motion to Dismiss the Fourth and Fourteenth Amendment Claims, State Constitutional Claim, and any Joint and Several Liability Claim. Defendants also move for dismissal on the ground that they are entitled to qualified immunity. No discovery has been conducted. For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part, Defendants' Motion.

## II. FACTS

On November 26, 1999, decedent was an inmate at the Mound Correctional Facility in the City of Detroit. Plaintiff alleges that throughout his detainment, decedent notified the officers and supervisors at the facility that he was in need of medical attention, specifically that he needed his medication and follow-up treatment from a recent hospital visit. *Compl.* ¶ 13. Plaintiff notes further that despite decedent's notice to Defendants of his condition, it is believed he was placed in the "hole" prior to his death. *Compl.* ¶ 15.

Plaintiff claims that decedent's requests for help were ignored until he was overcome by pneumonia. *Id.* Plaintiff was transported to a local hospital where he died on November 26, 1999.

## III. APPLICABLE LAW

A motion for judgment on the pleadings by a defendant pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is equivalent to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Games Galore of Ohio, Inc. v. Masminster,* 154 F.Supp.2d 1292, 1297 (S.D.Ohio 2001). Rule 12(c) provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Like a Rule 12(b)(6) motion, a Rule 12(c) motion tests the legal sufficiency of plaintiff's complaint. *Scheid v. Fanny Farmer Candy Shops Inc.,* 859 F.2d 434, 436 n. 1 (6th Cir.1988). To survive a motion to dismiss under 12(b)(6), the plaintiff must allege facts that if proved would result in the requested relief. *Helfrich v. PNC Bank, Kentucky, Inc.,* 267 F.3d 477, 480 (6th Cir.2001). The court's inquiry is limited to whether the challenged pleadings set forth sufficient allegations to make out the elements of a right to relief. *Scheid,* 859 F.2d at 436. The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* at 436. Where the plaintiff offers multiple factual scenarios for a particular claim, only one need be sufficient. *Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 494 (6th Cir.1995).

When considering a motion under Rule 12(b)(6), the district court must construe the plaintiff's well-pleaded allegations in the light most favorable to the plaintiff and accept the allegations as true. *Ruffin–Steinback v. dePasse,* 267 F.3d 457, 461 (6th Cir.2001). "The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Computer Leasco,*

Inc. v. Volvo White Truck Corp., 820 F.Supp. 326, 332 (E.D.Mich.1993) (citing Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Motions under Rule 12 raising matters outside the pleadings are to be decided under Federal Rule of Civil Procedure 56. Fed. R. Civ. Proc. 12(c).

## IV. ANALYSIS

### A. State Constitutional Claim(s)

■ Plaintiff brings its state constitutional claim(s) against Defendants in their individual capacities.[1] Compl. ¶¶ 1, 2, 20, 24, and 26. The Court notes that Plaintiff's Complaint does not identify what state constitutional provisions were allegedly violated by Defendants. Regardless of the constitutional provision, these claims must be dismissed; no inferred damages remedy exists against individual government employees for violation of a state constitutional right. Jones v. Powell, 462 Mich. 329, 612 N.W.2d 423 (2000). See also Britton v. Mills, 248 Mich.App. 244, 250, 639 N.W.2d 261 (2001). No general statute provides for a damage remedy for violations of the Michigan Constitution. Under certain narrow circumstances such a remedy may be inferred, as the Supreme Court did in Bivens v. Six Unknown Named Agents of Federal Bureau of Nar-cotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where it authorized a suit for damages against federal officials whose actions violated an individual's constitutional rights, even though Congress had not expressly authorized such suits. The Court, in Bivens and its progeny, has expressly cautioned, however, that such a remedy will not be available when "special factors counseling hesitation" are present. Id., at 396, 91 S.Ct. 1999. See also Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Before a Bivens remedy may be fashioned, therefore, a court must take into account any "special factors counseling hesitation." See Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648 (1983).

In its opinion in Smith v. Dep't of Public Health, 428 Mich. 540, 410 N.W.2d 749 (1987), the Michigan Supreme Court "recognize[d] the propriety of an inferred damage remedy arising directly from violations of the Michigan Constitution in certain cases." However, the court later noted in its Jones decision that the Smith ruling "only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy.[2]" Jones, 462 Mich. at 336, 612 N.W.2d at 426. The court reasoned that these concerns are inapplicable in actions against an individual defendant where a plaintiff may find relief under 42 U.S.C. § 1983 [3] and common-law

---

1. The parties, in their Joint Proposed Discovery Plan (filed September 6, 2002), have stipulated to the dismissal of the State of Michigan as a party to this action based on Eleventh Amendment Immunity.

2. The Smith court noted:

There are circumstances in which a damage remedy would not be appropriate. The absence of any other remedy would, as in Bivens, heighten the urgency of the question. Justice Harlan, concurring in Bivens, states that "the question then, is, as I see it, whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." 403 U.S. at 407, 91 S.Ct. 1999. In answering this question in the positive, Justice Harlan commented, "for people in Bivens' shoes, it is damages or nothing." Id. p. 410, 91 S.Ct. 1999. Where a statute provides a remedy, the stark picture of a constitutional provision violated without remedy is not presented. Smith, 428 Mich. at 647, 410 N.W.2d 749.

3. 42 U.S.C. provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law..."

tort theories. *Id.* Hence, with regard to the alleged state constitutional violations by Defendants in their individual capacities, Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, the state constitutional claims are dismissed pursuant to Fed R. Civ. P. 12(b)(6).

## B. Fourteenth Amendment Claim

■ Defendant argues that any substantive due process claim under the Fourteenth Amendment is subsumed by the Eighth Amendment and should be dismissed pursuant to 12(b)(6). The Court agrees.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). While analyzing a prisoner's Fourth Amendment claim in the context of an incident of police brutality, the Supreme Court noted that:

> [a]fter [a defendant's] conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' *(Whitley v. Albers,* 475 U.S. at 327, 106 S.Ct. 1078). Any protection that "substantive due process" affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.

*Graham,* 490 U.S. at 395, 109 S.Ct. 1865. *See also Thaddeus–X v. Blatter,* 175 F.3d 378, 387–88 (6th Cir.1999) (holding that the First Amendment was the proper analytical framework with which to guide a retal-iation claim, not substantive due process standards).

Likewise, in this case, the Eighth Amendment is the proper avenue for relief. The Supreme Court determined that the Eighth Amendment encompasses not only "physically barbarous punishments," but also the infliction of "unnecessary suffering [that] is inconsistent with contemporary standards of decency." *Estelle,* 429 U.S. at 103, 97 S.Ct. 285. The Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" required to state a cause of action under the Eighth Amendment. *Id.* at 104–05, 97 S.Ct. 285. Accordingly, Plaintiff's Fourteenth Amendment claim is properly dismissed under 12(b)(6) as the Eighth Amendment properly addresses Plaintiff's claim.

■ Plaintiff does not specifically mention the Eighth Amendment in its complaint. Nonetheless, the Court will review the complaint to determine if Plaintiff has sufficiently set forth an Eighth Amendment violation. The Supreme Court has described two general categories of Eighth Amendment claims in the prison setting: those involving "conditions of confinement," *e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and those involving "excessive use of government force," *e.g., Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Here, Plaintiff's allegations that prison officials denied Smith access to medical care fall into the "conditions of confinement" category of Eighth Amendment claims. "To succeed on a conditions of confinement claim, a plaintiff must show: (1) the deprivation alleged is, objectively, 'sufficiently serious,' and (2) the prison official had a sufficiently culpable state of mind." *Flint*

*ex rel. Flint v. Kentucky Dept. of Corrections,* 270 F.3d 340 (6th Cir.2001) *(citing Farmer,* 511 U.S. at 834, 114 S.Ct. 1970). A sufficiently culpable state of mind is one of 'deliberate indifference' to inmate health and safety. *Id.* (*quoting Wilson v. Seiter,* 501 U.S. 294, 302–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

### 1. Sufficiently Serious Deprivation

The denial of medical care, or the delayed access to such care when the need is apparent, can be sufficiently serious to constitute an Eighth Amendment violation:

> Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under section 1983.

*Estelle,* 429 U.S. at 104–5, 97 S.Ct. 285. Further, this Circuit has held that a prisoner has properly stated a cause of action under section 1983 where he alleges that his reasonable requests for medical treatment were denied where the need for the treatment was obvious and he was "thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976) (reversing district court's dismissal for failure to state a claim where plaintiff alleged jail officials denied medical treatment for his bleeding ulcer).

Plaintiff has alleged that Smith made Defendants aware that he was in need of his medication and follow-up treatment from his recent hospital visit. *Compl.*

¶ 13. Plaintiff further alleges that Defendants denied Smith access to prompt medical care and ignored his requests for medical attention. *Compl.* ¶ 15. Specifically, The Complaint notes that Smith was:

> 15. ... left without medical assistance for days. It is believed that [decedent] (sic) was placed in the "hole" prior to his death despite his medical conditions and despite the conditions of the correctional facility. The defendants did not contact the EMS or otherwise provide medical assistance to plaintiff's deceased until after [decedent] (sic) was found non-responsive in his cell. Plaintiff's deceased was not checked on by defendants throughout his return from the hospital, and subsequent requests for help were ignored, and scorned until he was overcome by pneumonia that caused his death on November 26, 1999. It is believed that [decedent] (sic) was last seen alive several hours prior to his death.

> 16. Defendants... failed to provide Plaintiff's deceased any medical assistance or transportation to a medical facility, failed to call for medical transportation, and failed to document in the desk blotter any information of plaintiff's decedent's complaints that would give notice to oncoming supervisors of plaintiff's decedent's complaints.

> 17. Plaintiff's decedent was found unresponsive by officer Calvin Green at or about 5:45 p.m. on or about November 26, 1999. The deceased was not transported to a hospital until 6:31 p.m. He was pronounced dead at approximately 6:49 p.m. Plaintiff's deceased underwent many enduring hours of pain and suffering without care or support from any of the defendants.

*First Amended Complaint* at ¶¶ 15, 17. At a minimum, under *Westlake* these allegations are sufficiently serious to establish

an Eighth Amendment violation. *See also Wallin v. Norman,* 317 F.3d 558, 561 (6th Cir.2003).

### 2. State of Mind

The next issue is whether the defendants acted with deliberate indifference to Plaintiff's need for medical treatment. Deliberate indifference exists if the officials "consciously disregarded a substantial risk of serious harm to [Smith]." *Wallin,* at 561 (*quoting Farmer,* 511 U.S. at 834, 114 S.Ct. 1970). In defining deliberate indifference, the *Farmer* Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837, 114 S.Ct. 1970; *see also Thaddeus–X,* 175 F.3d at 402. In considering motions for dismissal, a court must accept as true all well-pleaded facts in the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, the court must read the complaint as a whole, viewing it broadly and liberally in accordance with Federal Rule of Civil Procedure 8(f). Rule 8(f) provides, "All pleadings shall be so construed as to do substantial justice." Viewing the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged facts sufficient to prove the requisite deliberately indifferent state of mind..

The only question remaining under the deliberate indifference analysis is whether each defendant knew of, and disregarded, the risk to Smith's health. *Flint,* 270 F.3d at 353. This discussion will be taken up in the qualified immunity section of this analysis.

### C. Fourth Amendment Claim

■ Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted under the Fourth Amendment because prisoners do not have any Fourth Amendment rights against a seizure of their person or a restriction of their freedom due to incarceration. Defendants are correct.

An inmate has no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment proscription against unreasonable searches. *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Decedent has already participated in a criminal justice process where a determination was lawfully made that there was probable cause to seize him, that a crime was committed, and that the decedent committed that crime. After his conviction for commission of that crime, a court further determined that the decedent's liberty and freedom could be restricted by placing him in prison. As a result of this imprisonment, decedent no longer had any expectation of privacy which would prevent searches of his person, his cell, or his belongings without necessity of a warrant. *See id.* Furthermore, Plaintiff has not alleged any facts which implicate a violation of the Fourth Amendment. As discussed above, Plaintiff's proper cause of action is under the Eighth Amendment. Accordingly, the Fourth Amendment claim is dismissed.

### D. Qualified Immunity

■ Defendants contend that they are entitled to qualified immunity on all federal constitutional claims. These constitutional claims are the alleged violations of the Fourth, Eighth, and Fourteenth Amendments. The Court's analysis does not reach the question of qualified immunity on the Fourth and Fourteenth Amend-

ments because those claims have been dismissed. The only remaining issue is whether qualified immunity should bar Plaintiff's Eighth Amendment Claim.

Qualified immunity is designed to protect public officials from liability in an atmosphere of evolving constitutional rights. "[O]fficials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Scott v. Clay County, Tenn.,* 205 F.3d 867, 873 n. 9 (6th Cir.2000).

If a defendant raises qualified immunity, the defendant bears the initial burden of coming forward with facts to suggest that he or she was acting within the scope of discretionary authority. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). However, once qualified immunity has been raised, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.* To do so, a plaintiff must prove: (1) that the facts as alleged by him show a violation of a constitutional right; and (2) that such right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Because Defendants have demonstrated that they were acting pursuant to their roles as correctional facility officers and personnel, the Court now examines whether Plaintiff's allegations are sufficient to overcome Defendants' claimed immunity.

With respect to the first prong of the qualified immunity test, the Court, in its earlier analysis, concluded that Plaintiff's complaint generally pleaded a violation of the Eighth Amendment. Turning to the second prong of the test, the Court must determine whether prison officials, as reasonable persons, would have known, as of November 26, 1999, the date of Smith's death, that they were violating a clearly established right of Smith's. *See Williams,* 186 F.3d at 691. As courts have repeatedly recognized, a prisoner has a right not to have his medical needs disregarded. *See e.g. Estelle,* 429 U.S. at 104, 97 S.Ct. 285; *Whitley,* 475 U.S. at 320, 106 S.Ct. 1078; *Farmer,* 511 U.S. at 825, 114 S.Ct. 1970, *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The Sixth Circuit has held, since 1976, that a prisoner has a cause of action against prison officials when his reasonable requests for medical treatment are denied and he is thereby exposed to undue suffering or the threat of tangible residual injury. *Westlake,* 537 F.2d at 860. Furthermore, in 1994, the Supreme Court held that a prisoner may bring a claim against a prison official if the prison official acted deliberately indifferent "to inmate health and safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. Accordingly, the Court finds that Smith's right was clearly established at the time of his death.

The Court must now determine, viewing the pleadings in the light most favorable to Plaintiff, whether Plaintiff has sufficiently pled as to each defendant, his or her deliberate indifference to Smith's medical needs.

### 1. Warden Robinson, Lt. Matthew Naidow, and Edward Lintez

Plaintiff alleges that Robinson, Naidow, and Lintez are in command at the Mound Correctional Facility. Specifically, these individuals were the officers in charge, supervised prisoner detention officers, and bore decision-making responsibility to whether Smith would be provided medical

treatment or transportation to the hospital. *Compl.* ¶ 5. Plaintiff asserts that upon and throughout his detainment, Smith notified these supervisors that he was in need of medical attention. *Compl.* ¶ 13. Specifically, Smith indicated that he needed medication and follow-up treatment from a recent hospital visit. *Id.* Despite Smith's notice to these supervisors, the complaint alleges that he was left without medical attention for days and his requests for help went ignored. *Id.* Lintez and Naidow are further identified as failing to provide Smith with any medical assistance, failing to call for transportation to a medical facility, and failing to document any information of Smith's complaint's in the desk blotter that would give notice to oncoming supervisors of Smith's complaints. *Compl.* ¶ 16. Subsequently, Smith was found dead in his cell.

A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.1982). Here, Plaintiff alleges that Smith specifically informed supervisors of his condition and need for medical help directly, yet they did nothing for him. Taking these pleadings as true, they are sufficient to establish that the supervisors consciously disregarded a risk of serious harm to Smith, and, therefore, acted with deliberate indifference.

### 2. Calvin Green, Sharon Rife, Nurse Lewis, Tracey Best, and Monica Smith

Green, Rife, Lewis, Best, and Smith are alleged to be either prisoner detention officers or medical personnel. *Compl.* ¶¶ 6–8.

They were entrusted with the decedent's safekeeping, and had a duty to provide for his care, safety, and welfare. *Id.* These individuals had the responsibility of monitoring decedent Smith in order to assure that his health would not be jeopardized and that if he needed medical care, he would receive it. *Id.* ¶ 14. Plaintiff notes that decedent Smith notified these officers that he was in need of medical care, yet they did nothing to accommodate him. *Id.* His requests for help were ignored until he was overcome with pneumonia. *Id.* ¶ 15. Best and Lewis, like Lintez and Naidow, are also specifically identified as failing to provide Smith with any medical assistance, failing to call for transportation to a medical facility, and failing to document any information of Smith's complaint's that would give notice to oncoming supervisors of Smith's complaints. *Compl.* ¶ 16. Plaintiff notes that Smith also placed these individuals on notice that he needed medication and follow-up treatment from a past hospital visit, but was ignored. Plaintiff claims that Defendants consciously disregarded a substantially serious health risk to Smith and delayed access to his medical treatment. *Id.* The requisite deliberate indifference can be manifested when a prison official intentionally denies or delays access to medical treatment. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285. Thus, Plaintiff's allegations are sufficient to demonstrate that these defendants knew of and disregarded the risk to Smith.

### E. JOINT AND SEVERAL LIABILITY

Plaintiff attempts to sue Defendants jointly and severally. Defendants contend there is no more joint and several liability under Michigan law and the concept does not apply to 42 U.S.C.1983 actions because Plaintiff must prove personal Involvement and responsibility on the part of each Defendant.

MCL 600.2956 provides that in tort actions seeking damages for personal injury, property damage, or wrongful death, liability of each defendant for damages is several only, and not joint. The Michigan Court of Appeals recently held that this statute was constitutional and did not violate equal protection. *Smiley v. Corrigan*, 248 Mich. App. 51, 638 N.W.2d 151 (2001). As such, any state law claim against each defendant may only result in several liability.

Additionally, there is no joint and several liability under 42 U.S.C. § 1983. Section 1983 requires a showing of responsibility for personal wrongdoing. The statute states specifically, "any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, *shall subject, or cause to be subjected*, any person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall... be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress ..." 42 U.S.C. § 1983 [emphasis added]. The Supreme Court, in a decision declining to attach liability to a municipality on a theory of respondeat superior, noted that "Congress did not intend section 1983 liability to attach where such causation [by each party] was absent." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Each defendant must be shown to have been personally involved in the alleged unconstitutional activity in order for liability to be imposed under 42 U.S.C. § 1983. *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir.1982).[4] Thus, Plaintiff's claim for joint and several liability is dismissed with respect to the section 1983 and state law claims.

## V.  CONCLUSION

To survive a motion to dismiss for failure to state a claim, the "complaint must contain either direct or inferential allegations respecting all of the material elements to sustain recovery under some viable legal theory." *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir.2001) (*quoting Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). It is well-settled law that a complaint should not be dismissed for its failure to state a claim unless it appears beyond doubt that no set of facts in support of the claim would entitle the plaintiff to relief. *See e.g. Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *See also Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1189 (6th Cir.1996). Furthermore, when a defendant asserts a qualified immunity bar in a motion to dismiss a section 1983 claim, the plaintiff's complaint must

---

**4.** Note that although section 1983 appears broad enough to encompass negligent deprivations such as negligently having failed to adequately train, supervise, and control individual police officers who violate a plaintiff's constitutional rights, the trend in case law has been to limit section 1983 so as not to reach such isolated instances where negligent failure to adequately supervise, train, or control was involved. *See, e.g., Jamison v. McCurrie*, 565 F.2d 483 (7th Cir.1977); *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir.1976) (*en banc*); *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974); *Edmonds v. Dillin*, 485 F.Supp. 722 (N.D.Ohio 1980); *Rheuark v. Shaw*, 477 F.Supp. 897 (N.D.Texas 1979); *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978); *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977); cf. *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). *But see, Carter v. Carlson*, 144 U.S.App.D.C. 388, 447 F.2d 358 (D.C.Cir.1971), rev'd on other grounds sub nom., *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

establish the violation of a clearly established constitutional right.

The Court's analysis above supports a conclusion that Plaintiff's complaint satisfies this burden with respect to the Eighth Amendment claim. For that reason, Plaintiff's Eighth Amendment claim survives Defendants' Motion to Dismiss. In all other respects, Defendants' motion is **GRANTED.**

**IT IS SO ORDERED.**